**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SI CHEN,<br><br>Plaintiff,<br><br>v.<br><br>SCHEDULE A DEFENDANTS,<br><br>Respondents. | ) | NO. 3:26-cv-01775 |

**<u>MEMORANDUM ORDER DENYING PLAINTIFF'S MOTION FOR EQUITABLE RELIEF AND UNSEALING THE DOCKET</u>**

Plaintiff Chen, who is a resident of China, brings this patent infringement action against a large and inconsistent number of Defendants who are, as far as seemingly either the Court and Plaintiff can tell, also from China and are unincorporated associations. (ECF No. 1, at 2, 4-5 (parties' residences)); *Infra* Section II.D (comparing list of Schedule A Defendants and Defendants asserted in Plaintiff's Motion)). According to Plaintiff, Plaintiff is the owner of United States Design Patent No. D1,136,268 S, which is a patent for the design of a ladder, and Defendants have been selling knockoff ladders on the online commerce platform Temu, which is injuring Plaintiff's sales. (ECF No. 1, at Exhibits A-B). Specifically, Plaintiff brings a claim for Infringement of U.S. Patent under 35 U.S.C. § 271(a). (ECF No. 1, at 12-14).

After submitting their Complaint, on August 25, 2026, Plaintiff submitted a Motion for Leave to File Documents Under Seal which was granted on August 21, 2026. (ECF Nos. 4 (Motion); 9 (Order). A Motion for Alternative Service was additionally granted on September 2, 2026. (ECF No. 10). On September 2, 2026, Plaintiff also submitted a Motion for Temporary Restraining Order, Temporary Injunction, and Temporary Asset Restraint, (the "Motion") which

we now consider. (ECF Nos. 11 (Motion); 13 (Brief)). Given that this action is sealed on the docket, Defendants have not appeared either in person or by counsel. Based on the record now before it, the Court concludes that Plaintiff has not demonstrated that he is entitled to the relief sought in the Motion and it is DENIED.

**I. Legal Standard**

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578, 586 (3d Cir. 2002)). This is because a "preliminary injunction forces a party to act or desist from acting, not because the law requires it, but because the law might require it....In this sense, it is like 'judgment and execution before trial.'" *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024) (quoting *Herman v. Dixon*, A.2d 576, 577 (1958)). Therefore, a district court should grant preliminary injunctive relief sparingly. *See generally Ferring Pharms., Inc.,* 765 F.3d at 205.

"In exercising its discretion to grant or deny a preliminary injunction, a district court looks to four guideposts: (1) the plaintiff's likelihood of success on the merits; (2) the risk of irreparable injury absent preliminary relief; (3) the balance of equities; and (4) the public interest." *Americans for Prosperity Found. v. Albence*, No. 26-2469, 2026 WL 2563151 (3d Cir. Aug. 31, 2026) (quoting W*inter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). However, a movant for preliminary equitable relief must demonstrate that it can and will likely win on the merits and that it will more likely than not suffer irreparable harm in the absence of preliminary relief before considering the remaining factors. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017).

**II. Plaintiff Does Not Demonstrate a Likelihood of Success on the Merits.**

A plaintiff can satisfy the first factor—a likelihood of success on the merits—when they make a strong showing for there being a reasonable probability of their winning the case. *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 256 (3d Cir. 2020).

**A. Plaintiff Does Not Demonstrate a Likelihood of Success on the Merits Because the Court Lacks Personal Jurisdiction.**

For a temporary restraining order ("TRO") to be granted, among other things, a plaintiff is required to establish, among other things, that by a preponderance of the evidence "there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Xie v. GUANHE Home essentials*, No. 2:25-CV-00265, 2025 WL 1039233 (W.D. Pa. Apr. 8, 2025) (quoting *Indus. Elecs. Corp. v. Cline*, 330 F.2d 480, 482 (3d Cir. 1964)). "If the plaintiff fails to meet this requirement, denial of injunctive relief pendente lite may be justified on this ground alone." *Indus. Elecs. Corp*, 330 F.2d at 482.

District courts are authorized to exercise personal jurisdiction ("PJ") to the extent permissible under the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment to the Constitution. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 489-90 (3d Cir. 1985). The Pennsylvania long-arm statute authorizes personal jurisdiction so long as the Due Process Clause is satisfied. 42 PA. CONS. STAT. § 5322(b); *N. Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 690 (3d Cir. 1990). Therefore, both prongs of the PJ analysis are satisfied when the Due Process Clause is satisfied. *Id.*

**i. General PJ is inapplicable to this Case.**

General PJ satisfies Due Process when an individual's affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 411 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126

(2014)). The "paradigm" forums where a corporate defendant is at home are the corporate defendant's place of incorporation and its principal place of business. *Id.* at 155. In this case, the Plaintiff acknowledges that general personal jurisdiction is inapplicable as he asserts that the Defendants operate out of and/or are incorporated in China. (ECF No. 12, at 12).

**ii. Plaintiff has not Demonstrated that the Court has Specific PJ in this Case.**

Personal jurisdiction must exist as to each Defendant as to which judicial relief is sought. Specific PJ is proper when" (1) the defendant has minimum contacts with the forum state (i.e., the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state"), (2) the suit relates to or arises out of those in-forum activities, and (3) the exercise of jurisdiction "'comports with traditional notions of fair play and substantial justice,' i.e., the defendant 'should reasonably anticipate being ha[i]led into court' in that forum.'" *Xie v. GUANHE Home essentials*, No. 2:25-CV-00265, 2025 WL 1039233 (W.D. Pa. Apr. 8, 2025) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451-52 (3d Cir. 2003)).

Alternatively, when a plaintiff brings a claim under federal law, specific PJ can be satisfied under Federal Rule of Civil Procedure Rule 4(k)(2). Under Rule 4(k)(2), PJ is established when service of process over a defendant is completed if (1) the claim arises under federal law; "(2) the defendant [is] beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the defendant [has] sufficient contacts with the United States so that the court's exercise of personal jurisdiction over the defendant comports with the due process requirements of the Constitution or other federal law." *Saudi v. Acomarit Mars Servs*., S.A., 114 F. App'x 449, 455 (3d Cir. 2004) (not precedential).

Under Rule 4(k)(2), sufficient contacts analysis mirrors the standard PJ analysis, except that the relevant geographic forum for which the contacts are assessed is the United States as a whole.

*Id.; Yanushevskaya v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Assocs. Identified on Schedule A to Complaint*, No. 2:25-CV-790, 2025 WL 1868053 (W.D. Pa. July 7, 2025).

Here the Plaintiff asserts that specific PJ is proper because "Defendants advertise, display, offer to sell, and stand ready, willing, and able to, and upon information and belief do, sell and ship Infringing Products to residents within the Western District of Pennsylvania." (ECF No. 12, at 10). This statement is essentially conclusory boilerplate. Plaintiff attempts to support his boilerplate language by including an Exhibit B to its Motion, a collection of screenshots demonstrating that one *could* purchase most of the Defendants' ladders and have them shipped to an address in this District. (ECF No. 12, at 10).[1] Plaintiff does not provide any evidence that any actual sales of any infringing ladders have occurred into this District.

Plaintiff's jurisdictional argument fails because it is settled law that 'the mere operation of a commercially interactive web site'—even if accessible in the relevant forum—is insufficient to establish minimum contacts and therefore personal jurisdiction." *Xie*, 2025 WL 1039233, at *2 (citing *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 454 (3d Cir. 2003)). *Ren v. Individuals, Corps., Ltd. Liab. Cos., P'ships., & Unincorporated Assocs. Identified on Schedule A,* No. 2:25-CV-730, 2025 WL 1868044, at *5 (W.D. Pa. July 7, 2025) (asserting that screenshots of online shopping carts that indicate that the Defendants would ship to Pittsburgh, Pennsylvania if an order were placed are insufficient to establish person jurisdiction). Further Plaintiff does not provide any asserted facts to demonstrate that there is no state in the United States where PJ could lie, so PJ under Rule 4(k)(2) is not satisfied.

---

[1] The Complaint asserts that the Exhibit in question is Exhibit C but describes Exhibit B since Exhibit C does not contain screenshots which could be used to assess jurisdiction.

Plaintiff has not met his burden of establishing a reasonable probability that he has, by a preponderance of the evidence, established personal jurisdiction over any of the Defendants, globally or as required as to each individual Defendant as to which relief is sought. While this is not a final ruling regarding the ultimate issue of whether personal jurisdiction exists over each named Defendant in this case, for the matter of whether the Motions should be granted through the Court's equitable authority, this Court rejects the argument by Plaintiff that the maintenance of a commercial website through which Defendants advertise and sell products worldwide and on which infringing products could be purchased, including in or into Pennsylvania, alone is insufficient to establish the necessary minimum contacts. *See e.g., Xie*, 2025 WL 1039233, at *4.

**B. Plaintiff can Establish Venue Under 28 U.S.C. § 1391 (c)(3) but not Under 28 U.S.C. § 1391(b)(2).**

To hear a case, a court must be a proper venue for the matter. *See generally* 28 U.S.C. § 1391. Here, the Plaintiff asserts that venue is proper in this District based on 28 U.S.C. § 1391(b)(2) and (c)(3). (ECF No. 12, at ¶¶ 44-45). A court is a proper venue under 28 U.S.C. § 1391(b)(2) when "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated". 28 U.S.C. § 1391(b)(2). As described above, the Plaintiff has not demonstrated that the case has minimum contacts with this Court, let alone that a substantial part of the events giving rise to this Case have occurred in this District, therefore this Court does not have venue over this action under §1391(b)(2). *Id.* 28 U.S.C. § 1391 (c)(3) allows for a non-resident Defendant to be sued in any judicial district. 28 U.S.C. § 1391 (c)(3). Therefore, since Plaintiff alleges that all Defendants are alleged to be non-residents of this District, venue may be permissible at this stage in the proceedings.

**C. Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits Because Defendants' Ladders are not Plausibly Shown to Be Substantially Similar to the Relevant Product.**

Even if the Plaintiff were able to successfully allege PJ, in order to successfully seek a preliminary injunction and establish a likelihood of success on the merits, the patentee "must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire v. Case New Holland*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).

To determine whether a design patent has been infringed, courts engage in a two-step analysis. First, the Court construes the patent by defining the scope of the patent's protection. *See Samiam Grp., LLC v. Coopersburg Assocs, Inc.,* 650 F. Supp. 3d 295, 312 (E.D. Pa. 2023). Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996). For design patents, courts ordinarily construe the patent as depicted in the patent drawings, as verbal descriptions of a design will often obscure at least as much as they elucidate. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed Cir. 2015) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008)).

Second, the Court compares the products at issue to determine whether the patent has been infringed. "A design patent is infringed '[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.'" *Ethicon*, 796 F.3d at 1335 (quoting *Egyptian Goddess*, 543 F.3d at 670). Substantial similarity "must be evaluated in the context of the claimed design as a whole and not in the context of separate elements in isolation." *Id.*

**i. Claim Construction**

Following the Federal Circuit's direction, the Court will not, as it need not, provide an elaborate verbal description of the patented designs. Rather, the Court will for these purposes and at this

stage of the case construe the patent as it is depicted in the illustrations that accompany the patents. *See Homy Casa Ltd. v. Jili Creation Tech. Co.,* 755 F. Supp. 3d 904 (W.D. Pa. 2024).

Plaintiff's patent is claimed, described, and depicted in relevant part as follows:

*Primary Examiner* — Gino Colan

(57) **CLAIM**

The ornamental design for a ladder, as shown and described.

**DESCRIPTION**

FIG. **1** is a front, top and left-side perspective view of a ladder showing my new design;
FIG. **2** is a front elevation view thereof;
FIG. **3** is a rear elevation view thereof;
FIG. **4** is a left side elevation view thereof;
FIG. **5** is a right side elevation view thereof;
FIG. **6** is a top plan view thereof;
FIG. **7** is a bottom plan view thereof;
FIG. **8** is a rear, bottom and right-side perspective view thereof;
FIG. **9** is an enlarged view, of circled portion **9**, of FIG. **1**, thereof; and,
FIG. **10** is an enlarged view, of circled portion **10**, of FIG. **2**, thereof.
The broken lines throughout the drawing figures depict portions of the ladder that form no part of the claimed design.
The dot-dash broken lines depict the boundaries of the FIGS. **1**, **2**, **9** and **10** enlargement that forms no part of the claimed design.

**1 Claim, 10 Drawing Sheets**




ECF No. 12-1, at 4 (both images). The patent contains 10 drawings of the patented item. *Id.*

### ii. Claim Comparison

As noted, above, the operative question for the Court is whether Plaintiff has plausibly alleged that an ordinary observer, familiar with the art of the patent, would consider the Defendants' ladders to be substantially the same such that the observer might purchase Defendant's ladder when they meant to purchase Plaintiff's. *Homy Casa*, 755 F. Supp. at 909 (citing *Ethicon*, 796 F.3d at 1335). To make this determination, the Court relies on comparisons of the drawings included in Plaintiff's patent and the photographs of Defendant's ladders included in Plaintiff's filings. *See generally* (ECF Nos.12-1 (Patent); 12-3 (Exhibit C)).

The Court concludes that at this stage of the proceedings that Plaintiff has not plausibly alleged and then shown infringement of the patent such that a temporary injunction or asset seizure is warranted. Having compared the drawings in the patent with the photographs of the allegedly infringing ladders in Exhibit C, the Court concludes that an ordinary observer, familiar with the art in the patent, could not necessarily confuse the products for each other.

Most notably, none of the Defendants' products have the Plaintiff's ladder's unique, eye-catching checkerboard pattern and foot outline markings on the steps of the ladder. Similarly, all of Defendants' ladders lack Plaintiff's large protruding bolt caps on the side of a ladder legs. An ordinary observer seeing the image of the patent and Defendants' images could in less than a second tell the products apart due to the absence of such obvious features.[2]

The Court now addresses additional substantial differences between Plaintiff's patent and Defendants' ladders on an individual Defendant basis, which when assessing each individual Defendants' ladders as a whole —including the lack of step design and bolt caps— would enable an ordinary observer to immediately distinguish the products at issue and to do so:[3]

- **Defendant 1:** Compared to Plaintiff's patent, one of Defendant's ladders has an additional step, and one has one fewer step. The 5-step and 4-step ladders have an additional support bar. The 3-step ladder's support bars are in differing locations from Plaintiff's design. The ladder legs are rectangular while Plaintiff's are circular. The grips at the bottom of Defendant's are square and have an additional flat platform on the bottom while Plaintiff's grips are round and lack a flat platform. The curved support brace in all of Defendant's products are longer than the Plaintiff's design.

---

[2] If Defendants' products do in fact have such a design, then it is not evident based on the quality and/or perspective of the ladder images submitted to the Court.

[3] Defendants are analyzed in the numerical order listed in Schedule A.

- **Defendant 2:** Defendant's ladder legs are rectangular while Plaintiff's are circular. The grips at the bottom of Defendant's are square and have an additional flat platform on the bottom while Plaintiff's grips are round and lack a flat platform. Defendant's product has an additional support brace and the support braces are spaced differently from Plaintiff's design.
- **Defendant 3:** Compared to Plaintiff's patent, Defendant's product has two additional support bars, and the support bars are spaced differently. The ladder legs are rectangular while Plaintiff's are circular. While Plaintiff's ladder foot grips are round, the grips at the bottom of Defendant's are square and bulkier. The tool bar on Defendant's ladder also is larger than Plaintiff's design.
- **Defendant 4:** Compared to Plaintiff's patent, Defendant's product has two additional support bars, and the support bars are spaced differently. The ladder legs are rectangular while Plaintiff's are circular. While Plaintiff's ladder foot grips are round, the grips at the bottom of Defendant's are square and bulkier. The tool bar on Defendant's ladder is visibly larger than in Plaintiff's design.
- **Defendant 5:** Compared to Plaintiff's patent, Defendant's design has one additional step and support bar. Defendant's design has no tool bar and the curved brace at the top is shorter than in Plaintiff's patent.
- **Defendant 6:** Compared to Plaintiff's patent, Defendant's design has one additional step and support bar. The ladder legs are rectangular while Plaintiff's are circular. While Plaintiff's ladder foot grips are round, the grips at the bottom of Defendant's are square and bulkier.

- **Defendant 7:** Compared to Plaintiff's patent, Defendant's design has one more step and two more support bars. The support bars are spaced differently than in Plaintiff's design. The ladder legs are rectangular while Plaintiff's are circular. While Plaintiff's ladder foot grips are round, the grips at the bottom of Defendant's are square and bulkier. The curved brace at the top of Defendant's ladder is also shorter than the brace in Plaintiff's patent.
- **Defendant 8:** Compared to Plaintiff's patent, one of Defendant's ladders has an additional step, and one has one fewer step. The 5-step and 4-step ladders have an additional support bar. The 3-step ladder's support bars are in differing locations from Plaintiff's design. The ladder legs are rectangular while Plaintiff's are circular. The grips at the bottom of Defendant's are square and have an additional flat platform on the bottom while Plaintiff's grips are round and lack a flat platform.
- **Defendant 9:** Compared to Plaintiff's patent, Defendant's ladder has an additional step and support bar. Defendant's design lacks a tool bar and the curved brace at the top of the ladder is shorter than Plaintiff's.
- **Defendant 10:** Compared to Plaintiff's patent, Defendant's design has a longer tool bar, an additional support bar, and the curved brace at the top is shorter.
- **Defendant 11:** Compared to Plaintiff's patent, Defendant's design has an additional step and two additional support bars, the support bars are in different locations, the ladder legs are rectangular instead of circular, the curved brace at the top is shorter, and the ladder foot grips appear to be bulkier and square.
- **Defendant 12:** Compared to Plaintiff's patent, Defendant's design has an additional step and support bar, the support bars are spaced differently, there is no tool bar, and the curved brace at the top is shorter.

- **Defendant 13:** Compared to Plaintiff's patent, Defendant's design has an additional step and support bar, there is no tool shelf, and the ladder legs are rectangular.
- **Defendant 14:** Compared to Plaintiff's patent, Defendant's design has an additional support bar and the support bars are spaced differently.
- **Defendant 15:** Compared to Plaintiff's patent, Defendant's four step design has an additional support bar, the support bars are in differing locations, the ladder legs are rectangular instead of circular, and the ladder foot grips are square and have an additional flat platform. Defendant's three step design has fewer steps than Plaintiff's design, the support bars are spread differently, and the curved top is noticeably shorter than in Plaintiff's design.
- **Defendant 16:** Compared to Plaintiff's patent, Defendant's design has an additional support bar, the support bars are in differing locations, the ladder legs are rectangular instead of circular, the ladder foot grips are significantly bulkier and are square, and the curved top is noticeably shorter than Plaintiff's design.
- **Defendant 17:** Compared to Plaintiff's patent, One of Defendant's designs has an additional step, and one has one less step. Defendant's design further has an additional support bar, the ladder legs are rectangular instead of circular, and the front two ladder foot grips appear have an additional flat platform and are square.
- **Defendant 18:** Compared to Plaintiff's patent, Defendant's design has an additional support bar, the support bars are in differing locations, and the ladder foot grips are significantly bulkier and are square.

After conducting this comparison, the Court concludes for these purposes that a reasonable factfinder could not likely and necessarily find that the designs are substantially the same, such

that an ordinary observer familiar with the prior art could purchase Defendant's ladder supposing it to be Plaintiff's. Most, if not all, similarities between the products at issue are similarities universal to all ladders. And the Plaintiff's papers don't advance any reasoning to guide the Court's decision or to flesh out their argument. As boiled down, they amount to the Plaintiff providing an array of photos of ladders along with the patent, and in effect saying to the Court, "see, it's obvious" with no focus on the modes of the alleged infringement. Plaintiff has not established that he has a substantial likelihood of success on the merits of their Motion.

**D. The Court Harbors Substantial Doubt as to Plaintiff's Ability to Demonstrate a Likelihood of Success on the Merits Due to Internal Inconsistencies in Plaintiff's Filings.**

This Court further harbors substantial doubt as to Plaintiff's ability to demonstrate a likelihood of success on the merits due to the extraordinary number of internal inconsistencies and ambiguities within Plaintiff's own filings. Below is a non-exhaustive list of such inconsistencies and ambiguities.

- Defendants The Luminous, RLCCY, and Ramiel's Store2 have been omitted from Exhibit B. *Compare* (ECF No. 12-7 [Schedule A] (listing The Luminous as Defendant No. 12, RLCCY as Defendant No. 14, and Ramiel's Store2's as Defendant No. 15)) *with* (ECF No. 12-2 [Exhibit B: Screenshots]).
- Schedule A and Exhibit B refer to products being sold solely on the Temu marketplace, yet Plaintiff's Complaint, the Motion, the Declaration of Patentee, and the Declaration of Plaintiff's Counsel refers to products being sold on Amazon, Walmart, and other retailers. *Compare* (ECF Nos. 12-7 (Schedule A); 12-2 (Exhibit B: Screenshots)) *with* (ECF Nos. 12, at ¶¶ 10 (Complaint); 15 (Motion); 14-2, at ¶¶ 5 (Declaration of Patentee); 14-3, at ¶¶ 11 (Declaration of Plaintiff's Counsel)). Further, Plaintiff has not submitted any

evidentiary material demonstrating that potentially infringing material is being sold on retailers other than Temu.

- The Declaration of Plaintiff's Counsel asserts that he has "reviewed numerous cases" that support this Court granting an *ex parte* restraining order and asset freeze yet does not cite any case law to support such statements. (ECF No. 14-2, at ¶¶ 3, 4).
- Plaintiff's Motion for Equitable Relief includes screenshots and allegations regarding the following alleged Defendants who are not included on the Schedule A list of Defendants:

| | **Name** | **Citation** |
|---|---|---|
| A | geo yerong shop | (ECF No 15, at 3 (second Defendant on page)) |
| B | HypeHive | (ECF No 15, at 3 (third Defendant on page)) |
| C | CI meime shop | (ECF No 15, at 3 (fourth Defendant on page)) |
| D | Gaoyuhan shop | (ECF No 15, at 4 (first Defendant on page)) |
| E | COASTAL RHYTHMS | (ECF No 15, at 5 (third Defendant on page)) |
| F | Bi meimei | (ECF No 15, at 5 (fourth Defendant on page)) |
| G | LegendMart | (ECF No 15, at 6 (second Defendant on page)) |
| H | Xy Dining Room | (ECF No 15, at 6 (fourth Defendant on page)) |
| I | Shared shops local | ((ECF No 15, at 7 (first Defendant on page)) |
| J | GustoGifts | (ECF No 15, at 7 (second Defendant on page)) |
| K | COASTAL INC | (ECF No 15, at 7 (third Defendant on page)) |
| L | YY Specials Mall | (ECF No 15, at 7 (fourth Defendant on page)) |
| M | ZSTART BRIC | (ECF No 15, at 8 (first Defendant on page)) |
| N | Sanshui shop | (ECF No 15, at 8 (second Defendant on page)) |
| O | Gaolaoshi local | (ECF No 15, at 8 (third Defendant on page)) |

| | | |
|---|---|---|
| P | ShengshiYoupininIntl | (ECF No 15, at 8 (fourth Defendant on page)) |
| Q | Junye HomePro | (ECF No 15, at 9 (second Defendant on page)) |
| R | ISwiftShop | (ECF No 15, at 9 (fourth Defendant on page)) |
| S | Starfire Shop | (ECF No 15, at 10 (first Defendant on page)) |
| T | Summer hang | (ECF No 15, at 10 (second Defendant on page)) |
| U | ZH GLAM | (ECF No 15, at 10 (fourth Defendant on page)) |
| V | Happy Spatula | (ECF No 15, at 11 (first Defendant on page)) |
| W | KJ Furniture | (ECF No 15, at 11 (third Defendant on page)) |
| X | ASWH AceWordHigh | (ECF No 15, at 11 (fourth Defendant on page)) |
| Y | You can do it at will | (ECF No 15, at 12 (first Defendant on page)) |
| Z | EasyClimb Home | (ECF No 15, at 12 (second Defendant on page)) |
| AA | xkkadh | (ECF No 15, at 12 (fourth Defendant on page)) |
| BB | ShuangGo | (ECF No 15, at 13 (first Defendant on page)) |
| CC | WnW Furniture | (ECF No 15, at 13 (second Defendant on page)) |

This Court has many obligations when considering whether to grant equitable remedies but being Plaintiff's copyeditor is not one of them. At most, the Plaintiff's fillings can be boiled down to him telling this Court "we have a patent, here is the diagram, and here are a bunch of pictures of other ladders, you figure it out". This Court does not do its judicial business based on such a premise.

In essence, Plaintiff is requesting this Court to temporarily enjoin the sale of all of Defendants' products on multiple web platforms and freeze Defendants' assets, which could include revenue and profits from non-infringing products, despite Plaintiff (1) not concretely

identifying the individuals or entities Plaintiff seeks to enjoin; (2) providing no evidentiary material that any Defendants have sold likely infringing products on any web platform other than Temu; (3) not concretely identifying the complete list of internet commerce platforms from which the Plaintiff is requesting that the Court enable Plaintiff to seize assets from as related to each individual Defendant; (4) providing insufficient evidentiary material that personal jurisdiction exists in this action over each Defendant; and (5) providing insufficient evidentiary material, descriptions, or other filings for this Court to conclude that a substantial similarity exists between Plaintiff's patent and Defendant's products.

**III. Plaintiff has not Demonstrated a Risk of Irreparable Injury Absent Preliminary Relief**

The second prong that a plaintiff must satisfy in order to be eligible for a TRO is whether irreparable harm has been established. To fulfill this prong, a plaintiff must demonstrate that the plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). "Irreparable harm is presumed when a clear showing of patent validity and infringement has been made*." Impax Lab'ys, Inc. v. Aventis Pharms., Inc.*, 235 F. Supp. 2d 390, 395 (D. Del. 2002). Since the Court concludes that at this stage the Plaintiff has not successfully alleged that the Plaintiff has suffered an injury, the Court finds that the Plaintiff has not demonstrated a sufficient risk of irreparable injury.

**IV. The Balance of Equities and the Public Interest are Currently in Defendants' Favor**

Any plaintiff whose intellectual property is infringed has a strong interest in stopping infringement. In fact, it is commonly accepted that "a court ought not reward a business built on an infringing product by allowing that infringement to continue in the face of a proper application

for preliminary relief." *Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.,* 46 Fed. Appx. 964, 984-85 (Fed. Cir. 2002). However, equally as important are the Defendants' right to conduct lawful business. In a situation such as this where the Defendants are not readily identifiable and the sufficient proof of infringement is lacking, and whether this Court has personal jurisdiction over any of them is a dubious proposition, the balance of equities tips towards Defendants due to the heightened likelihood that a blameless individual will have their profits and livelihood enjoined. Further, while the public has a genuine, strong interest in ensuring that patent infringement is stopped, the public also has an interest in gainful, legitimate commerce occurring. Ultimately, because there is insufficient likelihood of success on the merits and because there is a higher likelihood that the contradictions and ambiguities in Plaintiff's filings will harm blameless individuals, neither the balance of equities nor the public interest are in Plaintiff's favor.

**V. Conclusion**

Even if the Court were to turn a blind eye to the Plaintiff's inability (on the record it has submitted) to demonstrate personal jurisdiction over each and every Defendant or a likelihood of success on the merits, which each alone are enough to justify this Court's denial of a temporary restraining order/preliminary injunction and the other extraordinary relief the Plaintiff now seeks, when Plaintiff's own moving papers are so internally contradictory and ambiguous that the Court is unable to ascertain who the Plaintiff is requesting the Court enjoin, for what violations, on what websites, such extraordinary provisional relief will not be granted by this Court. Plaintiff's inability to demonstrate a likelihood of success on the merits negates the risk of irreparable injury absent relief, tips the balance of equities in Defendants' favor, and demonstrates that the public interest would be harmed if such requested preliminary relief were granted.

IT IS HEREBY ORDERED that Plaintiff's Motion is DENIED without prejudice and the Clerk of Court is hereby directed to unseal all documents previously filed under seal in this case. Plaintiff is ORDERED TO SHOW CAUSE on the docket within twenty-one (21) days of this Order describing why this case should not be dismissed for lack of personal jurisdiction. In the alternative, Plaintiff may file an Amended Complaint and amended moving papers by the same date to cure the deficiencies explained in this Order.

DATED this 2nd day of October, 2026.

/s/ Mark R. Hornak
United States District Judge